UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRIENDS OF DEL MAR BLUFFS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>NORTH COUNTY TRANSIT DISTRICT, et al.,<br><br>Defendants. | Case No.: 3:22-CV-503-RSH-BGS<br><br>**ORDER GRANTING MOTION TO REMAND**<br><br>[ECF Nos. 7, 8, 12, 15] |

Before the Court is a Motion to Remand filed by Plaintiffs Friends of Del Mar Bluffs ("Friends") and its President, Laura DeMarco (collectively "Plaintiffs"). ECF No. 12. Defendants North County Transit District (the "NCTD") and its Executive Director Matthew Tucker (collectively "Defendants") oppose. ECF No. 23 (Opposition Br.). The Motion to Remand has been fully briefed. *See* ECF No. 24 (Reply Br.). Pursuant to Civil Local Rule 7.1(d), the Court finds the matter suitable for disposition without oral argument. As explained below, the Motion for Remand is granted.

/ / /

1

I.      Background

This lawsuit challenges a proposal to construct 6-foot-high safety fences along a railroad right-of-way operated by the NCTD on the coastal bluffs in the City of Del Mar, California, without obtaining a coastal development permit. Plaintiffs allege that the project would violate California law, put the stability of the Del Mar bluffs at risk, and interfere with the public's use of those bluffs. ECF No. 1-3, Ex. A ¶¶ 1–2. This lawsuit is related to two other proceedings: An administrative proceeding before the Surface Transportation Board ("STB") in Washington, D.C., and a second lawsuit filed in this Court after the present lawsuit was filed.

Common to all of these proceedings is an issue raised about preemption—namely, whether a provision of the Interstate Commerce Commission Termination Act of 1995 ("ICCTA"), 49 U.S.C. § 10501(b) ("Section 10501(b)"), preempts state coastal permitting regimes and state-law causes of action, in the context of the safety fencing project to be constructed on the Del Mar bluffs. For background, each of the three proceedings is described below.

A.      The STB Action

On August 28, 2020, the NCTD filed a Petition with the STB, the federal independent regulatory agency charged with the economic regulation of the national railroad system. *See North County Transit Dist. – Petition for Declaratory Order*, STB Finance Docket No. 36433 (the "STB Action").[1] *See* STB Action, Verified Petition (Aug. 28, 2020). In its Petition, the NCTD seeks a declaration that Section 10501(b) preempts any state and local coastal permitting regime to regulate the NCTD's rail line, including the California Environmental Quality Act ("CEQA"), California Public Resources Code

---

[1]     Filings and orders in the STB Action are available on the STB's website at https://www.stb.gov/proceedings-actions/dockets-and-service-lists/, where they are organized by date. In referring to particular filings, this Order identifies them by title and date.

§§ 21000 *et seq.*, and the California Coastal Act of 1976 (the "Coastal Act"), Cal. Pub. Res. Code §§ 30000 *et seq.*, with respect to any current or future projects that the NCTD undertakes in the railroad right-of-way in the City of Del Mar, including the safety fencing project that is the subject of the present action.

On November 6, 2020, the NCTD filed a motion to hold the STB Action in abeyance while the parties attempted to reach a resolution. *See* STB Action, Decision (Nov. 30. 2020). The STB granted the request, staying the case until March 30, 2021. *Id.* On March 29, 2021, the NCTD filed a status update advising that the parties were still attempting to reach a resolution and requested a further abeyance until December 31, 2021, which the STB granted. *See* STB Action, Decision (Apr. 7, 2021).

On December 30, 2021, the NCTD filed its next required status update, which (1) advised that despite significant efforts, the parties had been unable to reach a resolution, and (2) asked the STB to proceed with the STB Action in an expedited manner to resolve the disputes at issue. *See* STB Action, Status Update (Dec. 30, 2021).

The STB Action remains pending. In the most recent Status Report, the NCTD "respectfully urge[d] the STB to rule on the preemption issues set forth in its petition, so that it may commerce construction on [its] safety fencing project and have greater clarity on its responsibilities." STB Action, Status Update (Oct. 20, 2022). The STB has not yet issued a ruling.

**B.     The Friends Action**

On March 21, 2022, Plaintiffs brought this lawsuit in San Diego Superior Court by filing a Verified Petition for Writ of Mandate and Complaint (the "Complaint," or the "Friends Complaint"). *See Friends of Del Mar Bluffs v. North County Transit Dist.*, No. 37-2022-00011260-CU-WM-CTL (the "Friends Action"). ECF No. 1-3, Ex. A.

The Complaint alleged that on January 20, 2022, the NCTD approved a contract with Exbon Development, Inc. ("Exbon") to construct 6-foot-high fences along the railroad right-of-way on the Del Mar bluffs, without obtaining a coastal development permit as required by the Coastal Act. *Id.* ¶ 1. The Complaint alleges that the NCTD's approval of

1 | the Exbon contract, and the proposed implementation of the safety fencing project, are in
2 | breach of an agreement, referred to as the "Grant Agreement," that the NCTD had entered
3 | into with the California State Transportation Agency ("CalSTA"). *Id.* ¶ 2. In the Grant
4 | Agreement, the NCTD agreed to comply with California law, which includes CEQA and
5 | the Coastal Act. *Id.* ¶ 42. The Complaint alleged that the project would not only adversely
6 | impact scenic views and impede the use of trails and beach access in violation of the
7 | Coastal Act, *id.* ¶¶ 34–36, but also damage the environment, permanently alter the bluffs,
8 | accelerate erosion, and increase the risk of bluff collapse, *id.* ¶¶ 33, 37.

9 |       The Complaint pleaded four causes of action under California state law: (1)
10 | declaratory relief regarding breach of the Grant Agreement between the NCTD and
11 | CalSTA; (2) declaratory relief regarding breach of the covenant of good faith and fair
12 | dealing arising from the Grant Agreement; (3) quiet title as to the public easement to use
13 | trails; and (4) invalidity and illegality of the NCTD's actions. *See id.* The Complaint
14 | described the STB Action and characterized it as a breach of the implied covenant of good
15 | faith and fair dealing contained in the Grant Agreement, *id.* ¶ 79, but specified that
16 | "Plaintiffs do not seek a ruling regarding the issue of preemption pending in the STB
17 | Action," *id.* ¶ 5. The Complaint sought, among other relief, "an order and judgment
18 | declaring that NCTD is required to comply with California law as a result of the obligations
19 | it undertook and those imposed by law under the Grant Agreement," as well as an
20 | injunction "preventing NCTD from erecting a fence on the Upper Bluff in Del Mar." *Id.* at
21 | p. 23.

22 |       On April 12, 2022, Defendants filed a notice of removal pursuant to 28 U.S.C.
23 | § 1441(a). ECF No. 1. The notice bases removal jurisdiction on 28 U.S.C. § 1331 and
24 | federal question jurisdiction, and states that Plaintiffs' state-law claims are completely
25 | preempted by Section 10501(b). *Id.* ¶¶ 13–15. The notice states that, in the alternative,
26 | "even if Plaintiffs' claims are not completely preempted by the ICCTA, removal is still
27 | required because Plaintiffs' claims are necessarily federal in character, and the resolution
28 | of these claims depends upon the resolution of substantial federal questions." *Id.* ¶ 18. The

1  notice also states that removal of the action is proper under 28 U.S.C. § 1336, "which
2  provides that the district court has jurisdiction to enforce an order of the STB under the
3  circumstances provided herein." *Id.* ¶ 14. The removed case was docketed in this Court as
4  *Friends of Del Mar Bluffs et al. v. North County Transit District et al.*, Case No. 22-cv-
5  503 (S.D. Cal.).

6       On May 3, 2022, Defendants filed a motion to dismiss for failure to state a claim.
7  ECF No. 7. Defendants contend, in addition to making other arguments, that each of
8  Plaintiffs' four causes of action is preempted by the ICCTA. ECF No. 7-1 at 3–4.

9       On May 10, 2022, Defendants filed a Motion to Stay the case, arguing that judicial
10 efficiency would best be served by staying this case until the STB determines the
11 preemption issues. *See* ECF No. 8-1.

12      On May 23, 2022, Plaintiffs filed a Verified First Amended Petition for Writ of
13 Mandate and Complaint. ECF No. 10 (the "Amended Complaint"). The Amended
14 Complaint includes a fifth and additional claim (styled as "First Claim for Relief"), seeking
15 declaratory and injunctive relief pursuant to California Public Resources Code § 30803. *Id.*
16 ¶¶ 30–56.

17      On May 27, 2022, Plaintiffs filed their Motion to Remand. ECF No. 12.

18      On June 2, 2022, in the related case discussed below—referred to as the "CCC
19 Action"—the Court entered an order staying proceedings in both the CCC Action and the
20 Friends Action "until the STB decides the preemption issues." Case No. 22-CV-587, ECF
21 No. 11 at 9.

22      On June 9, 2022, Plaintiffs moved to vacate the stay and resume briefing on
23 Plaintiffs' Motion to Remand. ECF No. 15.

24      This case and the CCC Action were transferred to the undersigned on September 7,
25 2022. ECF No. 19. On October 13, 2022, the Court directed the Parties to complete their
26 briefing on Plaintiffs' Motion to Remand. ECF No. 20. The Parties have done so. *See* ECF
27 Nos. 23–24.
28 / / /

### C. The CCC Action

On April 19, 2022, approximately a month after the Friends Action was filed, the California Coastal Commission (the "CCC") filed its own Petition for Writ of Mandate and Complaint (the "CCC Complaint") in San Diego Superior Court, Case No. 37-2022-00014504-CU-MC-CTL (the "CCC Action"). ECF No. 1-2, Ex A at p. 7.[2] The CCC Complaint named as defendants the NCTD as well as Exbon. *Id.*

Like the Friends Complaint, the CCC Complaint challenges the NCTD's safety fencing project at the Del Mar bluffs. *Id.* The CCC Complaint alleges three state-law causes of action based on (1) violation of CEQA, (2) violation of the Coastal Act, and (3) violation of a Cease and Desist Order issued by the CCC. *Id.* Among other relief, the CCC Complaint seeks a writ of mandate directing the NCTD to (i) set aside and withdraw its approval of construction of the fencing along the coastal bluff in Del Mar; (ii) cancel its contract with Exbon for construction of the fencing; and (iii) refrain from taking on any other activities in furtherance of construction of the fencing until it complies with CEQA. *Id.* at pp. 18–19. The CCC Complaint also seeks damages, and an injunction requiring Defendants to cease and desist the undertaking of its development and to comply with the Coastal Act. *Id.* at pp. 19–20.

On April 26, 2022, the NCTD filed a notice of removal. ECF No. 1. The NCTD's notice of removal in the CCC Action invokes the same statutory bases of removal as its notice in the Friends Action. *Id.* ¶¶ 12–13. As in the Friends Action, the notice of removal in the CCC Action invokes jurisdictional theories of "complete preemption" and "substantial federal question." *Id.* ¶¶ 14, 17. On May 20, 2022, Exbon consented to removal. ECF No. 7.

On May 27, 2022, the CCC moved to remand the case. ECF No. 9. The same day, the parties in the CCC Action jointly moved to stay the proceedings "until such time as the

---

[2]   All references to the Court's docket in this section relate to *California Coastal Commission v. North County Transit District*, Case No. 22-CV-587 (S.D. Cal.).

[STB] has issued a ruling on" the STB Action. ECF No. 10 at 2.

On June 2, 2022, as discussed in the previous section, the Court issued an order staying the case pending the STB's ruling on preemption issues in the STB Action. ECF No. 11 at 9.

On June 7, 2022, the CCC filed a motion to vacate the stay and resume briefing on the CCC's motion to remand. ECF No. 12.

### III.    Legal Standard

"Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "The removal statute is strictly construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to the party invoking the statute." *California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2004) (citing *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir.1988)). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

Here, NCTD contends that the Court has original jurisdiction pursuant to 28 U.S.C. § 1331, which provides for federal jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States," also known as federal question jurisdiction. Removal jurisdiction based on a federal question is determined from the complaint as it existed at the time of removal, rather than as subsequently amended. *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1065 (9th Cir. 1979) ("In determining the existence of removal jurisdiction based upon a federal question, we must look to the complaint as of the time the removal petition was filed.").[3]

---

[3]    Although Plaintiffs' Amended Complaint is the operative pleading for purposes of the Friends Action generally, in assessing subject matter jurisdiction, the Court focuses on

"The general rule, referred to as the 'well-pleaded complaint rule,' is that a civil action arises under federal law for purposes of section 1331 when a federal question appears on the face of the complaint." *City of Oakland v. BP PLC*, 969 F.3d 895, 903 (9th Cir. 2020) (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). "[A] case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar*, 482 U.S. at 393. As the "master of the claim," the plaintiff can generally "avoid federal jurisdiction by exclusive reliance on state law." *Id.* at 392.

One exception to the well-pleaded complaint rule is the doctrine of "complete pre-emption." *Id.* at 393. "On occasion, the [Supreme] Court has concluded that the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). "To have this effect, a federal statute must 'provide[] the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action.'" *City of Oakland*, 969 F.3d at 905 (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003)).

The Ninth Circuit has noted that the Supreme Court has identified only three statutes that meet the criteria for complete preemption: (1) section 301 of the Labor Management Relations Act, (2) section 502(a) of the Employee Retirement Income Security Act of 1974, and (3) sections 85 and 86 of the National Bank Act. *See id.* at 905–06; *accord County of San Mateo v. Chevron Corp.*, 32 F.4th 733, 748 (9th Cir. 2022). In light of the Supreme Court case law, the Ninth Circuit held that "complete preemption under § 1331 exists when

---

Plaintiffs' original Complaint, on the basis of which Defendants removed the Friends Action to federal court. *See Libhart*, 592 F.2d at 1065 (holding that a claim filed in federal court after removal cannot confer removal jurisdiction).

Congress: (1) intended to displace a state-law cause of action, and (2) provided a substitute cause of action." *City of Oakland*, 969 F.3d at 906; *accord County of San Mateo*, 32 F.4th at 748.

A second exception to the well-pleaded complaint rule exists where "the Supreme Court has recognized a 'special and small category' of state-law claims that arise under federal law for purposes of § 1331 'because federal law is a necessary element of the . . . claim for relief.'" *City of Oakland*, 969 F.3d at 904 (quoting *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)). The Ninth Circuit has explained that "[o]nly a few cases have fallen into this slim category, including (1) a series of quiet-title actions from the early 1900s that involved disputes as to the interpretation and application of federal law; (2) a shareholder action seeking to enjoin a Missouri corporation from investing in federal bonds on the ground that the federal act pursuant to which the bonds were issued was unconstitutional; and (3) a state-quiet title action claiming that property had been unlawfully seized by the Internal Revenue Service (IRS) because the notice of seizure did not comply with the Internal Revenue Code." *Id.* at 904 (citations and internal quotation marks omitted). For federal jurisdiction to be proper under this second exception, the federal issues must be "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* at 904 (quoting *Gunn v. Minton*, 568 U.S. 251, 258 (2013)).

The inquiry as to the third requirement above—that the federal issue be "substantial"—focuses on the importance of a federal issue "to the federal system as a whole." *Gunn*, 568 U.S. at 260. "An issue has such importance when it raises substantial questions as to the interpretation or validity of a federal statute, or when it challenges the functioning of a federal agency or program." *City of Oakland*, 969 F.3d at 905 (citations omitted). A federal issue may qualify as "substantial" when it is a pure issue of law that draws into question the constitutional validity of an act of Congress. *Id.* In contrast, a federal issue is not substantial if it is "fact-bound and situation-specific," or raises "only a hypothetical question unlikely to affect interpretations of federal law in the future." *Id.*

(citations omitted). "A federal issue is not substantial merely because of its novelty or because it will further a uniform interpretation of a federal statute." *Id.*

## IV.     Analysis

The four claims in the Complaint arise under state law rather than federal law. The NCTD argues that each of these claims is completely preempted by Section 10501(b), which provides for exclusive jurisdiction of the STB in certain areas of "transportation" and "construction," and further provides that remedies under the ICCTA are exclusive and preempt other federal or state remedies:

> (b) The jurisdiction of the Board over—
>
> (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
>
> (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,
>
> is exclusive. Except as otherwise provided in this part, *the remedies provided under this part with respect to regulation of rail transportation are exclusive and pre-empt the remedies provided under Federal or State law*.

49 U.S.C. § 10501(b) (emphasis added).

At the outset, the NCTD contends that "[t]his Court and the STB have already determined that the Coastal Act's preclearance permitting requirements on NCTD's Line are completely preempted by the ICCTA, and that decision was later confirmed by the STB." ECF No. 23 at 6. NCTD cites the district court ruling in *City of Encinitas v. North San Diego County Transit Development Board*, No., 01-CV-1734, 2002 WL 34681621 (Jan. 14, 2002), and an STB decision, Finance Docket No. 34111, 2002 WL 1924265 (Aug. 19, 2002). However, the NCTD's description is wrong. Neither this Court nor the STB has

made such a determination.

The dispute to which the NCTD refers involved a municipality's claims that the NCTD's proposed construction of a railroad passing track violated CEQA and the Coastal Act. The district court, and thereafter the STB, indeed ruled that the claims were preempted by the ICCTA's Section 10501(b). However, in agreeing with NCTD that preemption applied as a defense in that case, neither decision addressed the doctrine of "complete preemption," or held that preemption in that case was sufficient to support original federal jurisdiction. Indeed, the district court in that case—disagreeing with the very position the NCTD asserts here—held that it did *not* have subject matter jurisdiction. Citing the preemption clause in Section 10501(b), the court stated that "Congress abrogated district court jurisdiction under § 1331 when it placed exclusive jurisdiction of railroad transportation under the STB." *City of Encinitas*, 2002 WL 34681621, at *5. The court explained: "Neither the state court nor the district court has jurisdiction over these claims. Rather, Plaintiff should bring its claims before the STB and, if necessary, appeal a decision by the STB to the Court of Appeals." *Id.*

The STB decision that the NCTD cites mentioned the district court's dismissal for lack of subject matter jurisdiction but did not revisit the question. *See* 2002 WL 1924265, at *2. Although this STB decision supports a preemption defense, it does not support a finding of subject matter jurisdiction based on complete preemption.

Arguing in favor of subject matter jurisdiction, the NCTD also relies heavily on the Ninth Circuit's decision in *City of Auburn v. U.S. Government*, 154 F.3d 1025 (9th Cir. 1998). That case arose from the STB's decision to approve a private railroad company's proposal to acquire, repair, and improve a rail line in Washington state, over the objection of municipalities invoking state and local environmental review laws. *See id.* at 1027–29. Citing the "broad language of Section 10501(b)(2)," the Ninth Circuit agreed with the STB that the ICCTA preempted the state and local laws. *Id.* at 1031. The Ninth Circuit concluded that "[b]ecause congressional intent is clear, and the preemption of rail activity is a valid exercise of congressional power under the Commerce Clause, we affirm the

STB's finding of federal preemption." *Id.*

Once again, there is a distinction between ruling that preemption is a valid *defense* in a particular case and ruling that there a sufficient basis for federal *subject matter jurisdiction* under 28 U.S.C. § 1331. The Supreme Court has unequivocally held that even where both parties concede that a "defense of preemption" is "the only question truly at issue in a case," such a defense does not constitute a basis for removal unless an exception to the well-pleaded complaint rule applies. *Caterpillar*, 482 U.S. at 393. A preemption defense is thus insufficient, without more, to establish federal subject matter jurisdiction.

Defendants' opposition brief does not purport to identify a single case from any court in any jurisdiction holding that a preemption defense based on the ICCTA provides a basis for federal question jurisdiction under 28 U.S.C. § 1331 or for removal jurisdiction under 28 U.S.C. § 1441(a). *See* ECF No. 23. In contrast, Plaintiffs' moving papers identified several cases remanding claims to state court despite an assertion of preemption under the ICCTA. *See* ECF No. 12-1 at 24. Defendants failed to address any of these.

In one illustrative case, a district court held that a preemption defense based on the ICCTA did not provide a basis for removal jurisdiction for the plaintiffs' CEQA claims. *See Californians for Alternatives to Toxics v. N. Coast R.R. Auth.*, No. C-11-4102, 2012 WL 1610756 (N.D. Cal. May 8, 2012). In that case, procedurally similar to this one, the plaintiffs were environmental groups who brought an action in California Superior Court against a railroad authority and its board, alleging that the defendants failed to conduct an adequate environmental review before approving the reopening of a railroad line. *See id.* at *1. The state lawsuit alleged two causes of action under CEQA. *Id.* The defendants removed the lawsuit to federal court pursuant to section 1441(a), and the plaintiffs sought to remand the lawsuit for lack of subject matter jurisdiction. *Id.*

The defendants in that case argued that the ICCTA preempted the plaintiffs' state-law claims, and that the federal court had subject matter jurisdiction based on "complete preemption," as well as based on a "substantial federal question" that was a necessary element of the claim for relief. *Id.* With regard to complete preemption, that district court

addressed the Supreme Court's requirement in *Beneficial* that the federal statute at issue "provide[] the exclusive cause of action for the claim asserted." *Id.* at *8 (quoting *Beneficial*, 539 U.S. at 8). The district court concluded that this requirement was not met in the case before it because "the ICCTA does not provide *any* cause of action for Plaintiffs' claims." *Id.* (emphasis added). The district court stated that the defendants "must point to some provision of the ICCTA that supplies a federal cause of action amounting to Plaintiffs' CEQA claims," but that the defendants "fail[ed] to meet this basic requirement necessary to establish removal based on complete preemption." *Id.* at *9. The court rejected arguments made by the defendants in that case that such a cause of action was provided by the National Environmental Policy Act ("NEPA") or the STB's implementing regulations. *Id.*

Here, Defendants not only fail to address relevant albeit non-binding authority, but also fail to address the binding authority that was found to be dispositive in *Californians for Alternatives*. Although Defendants argue that the ICCTA precludes each of Plaintiffs' claims, Defendants do not attempt to show that the ICCTA "provide[s] the exclusive cause of action for the claim asserted," a separate requirement for complete preemption. *See Beneficial*, 539 U.S. at 8; *City of Oakland*, 969 F.3d at 905. Put another way, although Defendants contend that the ICCTA was "intended to displace a state-law cause of action" (the first requirement for complete preemption in *City of Oakland*, 969 F.3d at 906), they do not endeavor to show that the statute "provide[s] a substitute cause of action" (the second requirement). *See Californians for Alternatives*, 2012 WL 1610756, at *9 ("Defendants have failed to show that NEPA or the STB's implementing regulations provide private redress for Plaintiffs' CEQA claims.").

Here, with the removal statute strictly construed against removal jurisdiction, the Defendants bear the burden of establishing that there is no doubt as to federal jurisdiction. *See California ex rel. Lockyer*, 375 F.3d at 838; *Gaus v. Miles, Inc.*, 980 F.2d at 566. Defendants have not carried that burden as to their theory of complete preemption.

Nor have Defendants carried their burden to establish the second exception to the

well-pleaded complaint rule, applicable where federal law is a necessary element of the claim for relief. Defendants' argument in this regard consists of three conclusory sentences, arguing that even if there is no complete preemption, their preemption defense still means that that resolution of the Plaintiffs' state-law claims depends upon the resolution of substantial federal questions. *See* ECF No. 23 at 25. This is the same approach that was rejected in *Californians for Alternatives*, where the district court described the defendants' arguments as "either rehashings of their complete preemption contentions or arguments related to defense preemption." *Californians for Alternatives*, 2012 WL 1610756, at *11. As the court also noted in that case, according to the Supreme Court, "it is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar*, 482 U.S. at 392. In the absence of persuasive authority or argument, this Court declines Defendants' invitation to expand the "slim category" of claims to which this second exception applies. *See City of Oakland*, 969 F.3d at 904.

In ruling that Defendants have failed to meet their burden to establish removal jurisdiction, this Court does not rule on the merits of Defendants' preemption defense.[4] Nor does the Court rule on the argument made by Plaintiffs that the federal statutory regime applicable to preemption analysis is not the ICCTA at all, but instead the Federal Rail Safety Act ("FRSA"), 49 U.S.C. §§ 10101 *et seq*.

---

[4] The California Supreme Court has held that although the ICCTA generally preempts state regulation of rail transportation, preemption did not prevent the application of California's environmental preclearance requirements to a railroad authority. *Friends of the Eel River v. North Coast R.R. Auth.*, 3 Cal. 5th 677, 740 (2017) ("In this case, the application of CEQA to [the defendant railroad authority] would not be inconsistent with the ICCTA and its preemption clause. This is both because we presume Congress did not intent to disrupt state self-governance without clear language to this effect, and because the ICCTA leaves a relevant zone of freedom of action for owners that the state, as owner, can elect to act in through CEQA.").

Finally, Defendants' notice of removal asserts, as a separate basis for removal jurisdiction 28 U.S.C. § 1336, "which provides that the district court has jurisdiction to enforce an order of the STB under the circumstances provided herein." ECF No. 1 ¶ 14.[5] In their opposition brief, Defendants do not argue that there is any existing STB order which this Court has jurisdiction to enforce. Instead, Defendants maintain that if the Court does not dismiss Plaintiffs' claims as completely preempted, "a referral to the STB of the specific preemption issues as articulated [in] this Action, pursuant to 28 U.S.C. § 1336, would be appropriate." ECF No. 23 at 7. Defendants also state that, "unless dismissal is warranted in comity with the Court's prior ruling in *City of Encinitas*, then the district court should consider a referral under 28 U.S.C. § 1336, leave the stay of these matters in place, and retain jurisdiction." *Id.* at 7–8. Defendants do not appear to argue that referral of a case under 28 U.S.C. § 1336(b) creates an independent basis for federal subject matter jurisdiction—that by referring a case, a district court obtains jurisdiction to hear the case. Here, the Court sees no basis for an STB referral and notes that the question of preemption has been pending in the STB Action since August 2020 without any need for a referral from this Court.

///

///

///

---

[5]   Section 1336(a) confers subject matter jurisdiction, providing that "the district courts shall have jurisdiction of any civil action to enforce, in whole or in part, any order of the Surface Transportation Board, and to enjoin or suspend, in whole or in part, any order of the Surface Transportation Board for the payment of money or the collection of fines, penalties, and forfeitures." 28 U.S.C. § 1336(a). Section 1336(b) addresses referral of an issue to the STB: "When a district court or the United States Court of Federal Claims refers a question or issue to the Surface Transportation Board for determination, the court which referred the question or issue shall have exclusive jurisdiction of a civil action to enforce, enjoin, set aside, annul, or suspend, in whole or in part, any order of the Surface Transportation Board arising out of such referral." *Id.* § 1336(b).

## IV. Conclusion

For the foregoing reasons, Plaintiffs' Motion to Remand (ECF No. 12) is **GRANTED**. The case is hereby **REMANDED** to the Superior Court for the State of California, County of San Diego. All other pending motions, including Defendants' Motion to Dismiss (ECF No. 7), Defendants' Motion to Stay (ECF No. 8), and Plaintiffs' Motion to Vacate Stay (ECF No. 15) are **DENIED** as moot. The Clerk of Court is **DIRECTED** to close the case.

**IT SO ORDERED**.

Dated: November 18, 2022

Hon. Robert S. Huie
United States District Judge